Filed 3/1/16  Ortolano v. Los Angeles Unified School Dist. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RALPH J. ORTOLANO, JR., | B258305 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC491637) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joanne O'Donnell, Judge.  Reversed and remanded.

Ralph J. Ortolano, Jr., in pro. per., for Plaintiff and Appellant.

Holguin, Garfield, Martinez & Quinonez, Jesus Quinonez and Michael Plank for United Teachers Los Angeles as Amici Curiae on behalf of Plaintiff and Appellant.

Los Angeles Unified School District Office of General Counsel, Anthony J. Bejarano, Assistant General Counsel, and Marcos F. Hernandez, Associate General Counsel, for Defendant and Respondent.

_____

Ralph J. Ortolano, Jr., a captain in the United States Navy Reserve, filed petition for writ of traditional mandamus, joined with causes of action for declaratory and injunctive relief, against his former employer, the Los Angeles Unified School District (hereafter the District). Ortolano alleged he qualified for statutory classification as a "permanent" teacher (see Educ. Code, § 44000 et seq.) on a date before the District terminated him. Further, Ortolano alleged that the District violated the Uniformed Services Employment and Reemployment Rights Act of 19994 (USERRA; 38 U.S.C. § 4301 et seq.) in connection with his employment.[1] He sought a judgment compelling the District to restore him to employment, "as a certificated permanent employee with a full-time assignment." The trial court denied Ortolano's claims and entered judgment in favor of the District. Ortolano appealed.[2] We reverse the judgment and remand with directions to the trial court to enter a finding that Ortolano attained permanent teacher status at the conclusion of the 2009-2010 school year, and for such other proceedings as are necessary to determine his claims for wages and benefits for the period during which he was denied such status.

## FACTS

### Background

In 2002, the District hired Ortolano as an adult education teacher in its Division of Adult and Career Education (DACE). At all relevant times thereafter, Ortolano worked as an adult education teacher in the DACE system at various facilities operated by the District. Under Ortolano's accounting of his teaching duties over a course of years, he accepts that the District properly classified him as a "temporary" teacher, largely without protections afforded to "probationary" or "permanent" teachers, under the applicable Education Code provisions up to the start of fall term of the 2006-2007 school year.

---

[1] All undesignated section references hereafter are to the Education Code, and all references to USERRA sections are to title 38 of the United States Code.

[2] Ortolano was represented by counsel in the trial court; he is now self-represented on appeal. He has advised us that he is a member of the state bar.

*The Teaching Service and Military Service at Issue*

During the first half of the 2006-2007 school year, the District assigned Ortolano to work 13 hours per week. This schedule placed Ortolano on track to remain classified for the 2006-2007 school year as a temporary teacher under the third paragraph of section 44929.25, As we develop below, the number of hours that a teacher works factors into his or her classification under the Education Code.

However, starting in late January 2007, the District increased Ortolano's assigned hours to 20 hours per week. This work schedule included 18 hours of regular assigned teaching duties, plus an additional two hours of teaching duties that were ostensibly assigned pursuant to a written contract signed by Ortolano. The written contract stated that the two additional assigned hours were offered through a "categorically funded program" — identified on the face of the contract as the "WIA." In papers submitted for trial of Ortolano's current writ action, the District presented evidence establishing that the WIA referred to the Workplace Investment Act under which the federal government funds education programs, including English as a Second Language (ESL) services. (See U.S.C. § 2801 et. seq.)

Further, the January 2007 contract signed by Ortolano stated that the two hours of teaching which were the subject of the contract were "offer[ed] . . . under the provisions of section 44909." As we explain more fully below, section 44909 authorizes school districts to employ teachers for a "categorically funded program," on an as-needed basis, without those teaching hours being credited toward obtaining status as a "permanent" teacher. Ortolano's January 2007 contract included language indicating that it would terminate on a specific date, June 23, 2007. For ease of discussion, and without crediting any legal conclusions to the term, we hereafter refer to the two additional hours of teaching that the District assigned to Ortolano pursuant to the January 2007 contract as "section 44909 hours."

The category into which all or any part of the number of assigned teaching hours worked by Ortolano beginning in January 2007 are placed is a subject of significant import in Ortolano's current action. As we discuss below, total teaching duties of more

3

than 18 hours per week may have qualified Ortolano for classification as a probationary teacher, with certain accompanying employment rights and benefits. Conversely, total teaching duties of 18 hours or less per week may have left him classified as a temporary teacher. Stated in other words, the question is whether Ortolano worked a total of 20 hours per week of regular District teaching hours starting in January 2007, or, alternatively, whether he worked 18 hours of regular District teaching hours, and two section 44909 hours severable from his regular District service hours, the latter of which would not be counted in determining his status as a probationary teacher.[3]

For both semesters of the 2007-2008 school year, the District employed Ortolano to work 20 hours per week, which again included 18 hours of regular teaching duties, and two hours of additional teaching duties that were ostensibly assigned through a WIA categorically funded program. Ortolano signed a written contract for the two additional hours in the 2007-2008 school year as he did for the year before. The contract, as the one noted above, provided that the two additional hours were offered under the provisions of section 44909. So, again, there is a question as to whether Ortolano worked a total of 20 hours per week of regular District duties during the 2007-2008 school year, or whether he worked 18 hours of regular District teaching hours, and two section 44909 hours of teaching hours which would be viewed a separate from his District service hours and which would not be counted in determining his status as a probationary teacher.

In August 2008, just prior to the start of the 2008-2009 school year, Ortolano deployed overseas. A short time before he deployed, the District had assigned Ortolano to work a schedule for the 2008-2009 school year as in the prior school year, namely, 18 hours per week regular teaching duties, and an additional two hours per week

---

[3] Ortolano's operative pleading in his current writ proceeding did not affirmatively seek a ruling that his two additional hours of teaching under the section 44909 contracts should be counted as regular District teaching hours; he merely alleged that he had worked 20 hours during certain school years. The District raised the issue of the categorization of Ortolano's two additional teaching hours under section 44909 in the course of the writ proceedings as a defense. In short, the District maintained that Ortolano never worked more than 18 hours of regular teaching duties because the two additional hours were worked under section 44909 contracts.

ostensibly assigned through a WIA categorically funded program. Ortolano again signed a written contract which provided that the two additional hours were offered under the provisions of section 44909. The contract specified a termination date of March 27, 2009. In summary, the District assigned Ortolano to teach a certain number of hours just before the start of the 2008-2009 school year, but he never actually taught during the first part of the school year because he was away for military service. The facts here also became a subject of Ortolano's current action as it implicates the USERRA.

Ortolano remained deployed for military service through late November 2008. Upon his return, Ortolano informed the District that he would be ready to return to work on December 1, 2008, and that he "expect[ed] to return to work . . . with [his] full complement of hours." Had Ortolano returned to work as scheduled prior to his deployment, his work hours would have consisted of the 18 hours per week regular teaching duties, and an additional two hours per week ostensibly assigned through a categorically funded program, pursuant to the written contract he signed just before the start of the 2008-2009 school year. Instead, the District told Ortolano to report to work on December 8, 2008 for an assignment that consisted of roughly 12 hours per week. On December 15, 2008, the District assigned Ortolano an additional 8 hours per week. These two assignments terminated on June 18, 2009, at the end of the 2008-2009 school year. Apart from the section 44909 contract that Ortolano had signed before the start of the 2008-2009 school year, which the District apparently disregarded when he left for military service, Ortolano did not sign a new section 44909 contract for any assigned hours in the 2008-2009 school year that he worked after he returned from his military service.

For the start of the 2009-2010 school year, the District assigned Ortolano to work 10 hours per week. In October 2009, Ortolano received another assignment totaling five hours per week. In January 2010, Ortolano received an additional assignment teaching ESL. His total hours were 18 hours per week from January 2010 through the end of the 2009-2010 school year. It appears to be an undisputed fact that Ortolano did not sign a

5

section 44909 contract for any part of the 2009-2010 school year. The average number of hours that Ortolano worked during the 2009-2010 totaled less than 18 hours per week.

For the 2010-2011 school year, Ortolano was assigned to work 18 hours per week. During the spring 2011 semester, the District assigned Ortolano to work 24 hours per week from February 28, 2011 through June 9, 2011, with 6 of the 24 hours offered through a categorically funded program to teach ESL. Ortolano signed a section 44909 contract for the period from February 2011 to June 2011 which provided that the six hours were offered under the provisions of section 44909.

For the start of the 2011-2012 school year, Ortolano was assigned to work 18 hours per week. In February 2012, the District assigned Ortolano to work an additional two hours per week, offered through a categorically funded program to teach ESL. As he had before, Ortolano signed a written contract which provided that the two hours were offered under the provisions of section 44909.

In March 2012, the District served Ortolano with a "Reduction in Force" (RIF) notice, advising him that he would not be re-elected, or hired back, for the 2012-2013 school year.[4] In July 2012, the District published a list of teachers whose "layoffs" would be rescinded. The District did not rescind Ortolano's layoff, and did not provide him with an administrative hearing or other process to challenge these determinations.

*The Litigation*

In September 2012, Ortolano commenced his current action against the District. In January 2013, Ortolano filed his operative first amended petition for writ of traditional mandate pursuant to Code of Civil Procedure section 1085, joined with causes of action for declaratory and injunctive relief. The operative pleading sought a judgment and writ commanding the District to "acknowledge and enforce" Ortolano's "right[] . . . to re-employment as a full-time certificated teacher" based upon 11 separate causes of action

---

[4] At the time Ortolano received his RIF notice, section 1296, subdivision (b), mandated that a school district serve such notice on a teacher by March 15 of the employee's second complete consecutive year of employment. In the event such a notice was not given, the employee was "deemed reelected for the next succeeding school year" by operation of law. (§ 1296, subd. (b); see also § 44929.21, subd. (b).)

seeking a declaration of rights under, and commanding abidance with, multiple sections of the USERRA and the Education Code.

Ortolano's pleading alleged that, as of "September 9, 2009, or such other date as the court should determine proper," the District had "failed to properly classify" him as a "permanent status certificated employee." Ortolano alleged he had satisfied the statutory definition of a probationary teacher during the 2007-2008 and 2008-2009 school years, taking into account as to the latter school year the time that he had spent away from teaching during that year while serving in the military, and that he therefore qualified for permanent teacher status under section 44929.21, subdivision (b). Section 4429.21, subdivision (b) provides: "Every employee of a school district . . . who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district."

Ortolano tried his action to the trial court in June 2013. The trial briefs and evidence demonstrate that the case was presented along the following lines. Ortolano asserted that he worked as a probationary teacher during the 2007-2008 school year, and during the 2008-2009 school year provided he was given credit for his military service under the USERRA for the 2008-2009 school year. This meant, he concluded, that he qualified as a permanent teacher at the beginning of the 2009-2010 school pursuant to section 44929.21, subdivision (b), because he had worked for two consecutive years as a probationary teacher. Specifically, Ortolano claimed he became a permanent teacher on September 8, 2009. The District asserted that Ortolano's time away for military service could not substitute under the USERRA for actual probationary teaching time in the classroom during the 2008-2009 school year. Further, the District argued that Ortolano never taught as a probationary teacher during any school year because he never worked the threshold of more than 18 hours per week. This position was based on the section 44909 contracts that Ortolano signed at various times during his employment.

7

The court denied Ortolano's claims, based on a series of interpretations of different Education Code sections. The court interpreted section 44929.25 to provide that adult educators such as Ortolano, who do not work more than an average of 18 hours per week, are statutorily defined as temporary employees. Further, that when section 44929.25 is read in conjuction with section 44915, the statutory scheme means, as summarized by the court: "To the extent that an adult educator works more than [the threshold of 18 hours per week], he does not fit the definition of a temporary employee, and must be considered a probationary employee."

As to the District's position under section 44909, the court explained the relationship between section 44929.25 and 44909 as follows: "[T]he hours worked under [a] specially funded contract are not credited towards the attainment of permanent tenured status [under section 44909.] However, section 44909's prohibition of crediting special contract hours concerns the accumulation of service time for tenure, [i.e., permanent teacher status,] while the temporary/probationary threshold under [section] 44929.25 concerns total hours worked during the relevant period. It does not appear that the former restriction applies to the latter [subject matter]. See *Haase v. San Diego Community College District* (1980) 113 Cal.App.3d 913, 918 (temporary classifications are strictly construed and generally are read to defeat attempts to subvert the protections provided by the tenure system)." The court then found that Ortolano had worked 20 hours per week during the 2007-2008 school year, "18 are regular and 2 hours . . . are designated 'specially funded programs. . . .'"[5]

The court then viewed its task to be to determine whether Ortolano's workload exceeded 18 hours per week during any or all of the school years he worked, rendering him a probationary teacher accordingly. The court reached the following conclusions.

---

[5]    Here, we interpret the trial court's ruling to include a finding that Ortolano did work pursuant to validly entered and implemented section 44909 contracts with the District. We discuss this finding below in addressing Ortolano's arguments on appeal.

- For the 2007-2008 school year, Ortolano was a probationary teacher because his average workload was 20 hours per week.

- For the 2008-2009 school year, Ortolano was a probationary teacher because his average workload was 20 hours per week, taking into account his military service.

- For the 2009-2010 school year, Ortolano was a temporary teacher because his average workload was less than 20 hours per week.

- For the 2010-2011 school year, Ortolano was a probationary teacher because his average workload was 20.211 hours per week.

- For the 2011-2012 school year, Ortolano was a probationary teacher because his average workload was 18.976 hours per week.

In finding that Ortolano's average workload in the 2007-2008 and 2008-2009 school years totaled 20 hours per week, the trial court included in his teaching hours the two additional section 44909 hours that he had worked in those years ostensibly under the written contracts the he had signed which referred to section 44909. The court ruled that section 44909 only applied to the subject of eligibility for permanent tenured status, and that, in working a total of 20 hours per week, Ortolano met the statutory definition of a probationary teacher. In summary, the court rejected the District's position that section 44909 hours must not be counted in determining a person's status as a probationary teacher. The court did not explicitly explain what tenure protections, if any, would inure to a person who attained probationary teacher status under the court's interpretation of the relationship between sections 44909, 44925.25 and 44915.

Finally, the trial court addressed the ultimate issue whether Ortolano attained the status of a permanent teacher at any point during his employment with the District. Here, the court ruled that Ortolano did not attain the status of a permanent teacher at the conclusion of his 2007-2008 and 2008-2009 school years because, while the time in military service would be counted to determine his probationary teacher status for the 2008-2009 school year as noted above, that time would not be counted for purposes of

9

transitioning to permanent teacher status because he was not subject to a period of observation and evaluation during the 2008-2009 school year. In other words, while Ortolano satisfied the statutory definition for probationary teacher status for the 2008-2009 school year when taking into account his military service, he did not meet the qualifications for transitioning to permanent teacher status upon the completion of the 2008-2009 school year because he had not been subject to review and observation in teaching duties during the whole of the 2008-2009 school year.

Further, the court found that, while Ortolano was a probationary teacher for the 2010-2011 school year and the 2011-2012 school year, did not attain permanent status at the end of the 2011-2012 school year because the District had decided not to "re-elect" him for the 2012-2013 school year, having served him with a RIF in March 2012.

The court signed and entered a judgment in favor of the District. Ortolano filed a timely notice of appeal.

## DISCUSSION

## I. The District's Claim that Ortolano Never Qualified for Probationary Teacher Status Lacks Merit.

We begin our discussion with an argument by the District that, if correct, potentially resolves all of the issues in Ortolano's current case, which is that Ortolano never qualified for probationary teacher status during any school year. Specifically, the District argues that (1) probationary teacher status during any given school year, the predicate ground for transitioning to permanent teacher status, required Ortolano to work a teaching schedule averaging more than 18 hours per week over the course of a given school year , and that (2) he taught less than this threshold every single school year in which he was employed by the District. Stated in other words, the District proposes that Ortolano remained a temporary teacher at all times during his employment with the District, and never attained any probationary teacher rights or protections under the Education Code. Further, as a consequence of his temporary teacher status, the USERRA "could never apply" to any material issue in the current case. The District's proposition

10

that Ortolano never qualified for anything more than temporary teacher status is based on section 44909. The trial court disagreed with the District on this point, and so do we.

The District's argument regarding Ortolano's status as a temporary teacher is based on the section 44909 contracts that he signed. The District asserts that Ortolano worked less than the threshold for probationary teacher status during all of the school years in which that he signed a section 44909 contract because the hours worked pursuant to those contract must be excluded from the calculation of total hours with which he may be credited for purposes of calculating his probationary teaching status. The District argues that the extra section 44909 hours cannot be added to his underlying regular District teaching hours, meaning that his status never transformed from that of a temporary teacher into that of a probationary teacher. Essentially, the District maintains that the threshold of more than 18 teaching hours per week for purposes probationary teacher status means more than 18 hours of regular teaching duties, and not some combination of regular teaching hours plus section 44909 hours which together add up to more than 18hours.

For the 2007-2008 school year, the trial court recognized that Ortolano "worked 20.00 hours per week [consisting of] 18.00 regular hours and 2.00 hours." Further, the court ruled that 20 hours equals 20 hours when determining probationary teacher status under section 44929.25. Thus, Ortolano was a probationary teacher during the 2007-2008 school year.

We affirm the trial court's conclusion that Ortolano was a probationary teacher during the 2007-2008 school year, albeit not completely in line with the trial court's reasoning. As we explain, we find Ortolano attained probationary teacher status based on the specific factual circumstances of his case.

### The Education Code

More than one of the published cases addressing the Education Code's provisions governing the classification of teachers has used terms such as "complex and obscure" or "in internal conflict" with each other. (See, e.g., *Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist*. (1977) 76 Cal.App.3d 223, 228; *California Teachers*

11

*Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 153.) We agree.
Be this as it is, one basic tenet of the statutes is that teachers are divided into three main
classifications: temporary, probationary, and permanent.[6] It is also clear that a
probationary teacher who meets certain qualifications, primarily service for a time period
prescribed by the Education Code, will then attain the status of a permanent teacher.
(See § 44929.21, subd. (b).) Also certain is that the statutory protections afforded a
teacher under the Education Code, e.g., the right to be re-elected to teach for an ensuing
school year, and the right to due process hearings for employment decisions, are
dependent on the teacher's proper classification. In other words, the critical question is
not how a school district classifies a teacher as a matter of its own record-keeping or its
human resources management, but how that teacher is actually classified under the
Education Code, given the circumstances of his or her employment.

This brings us to some specific statutory provisions. Section 44915 provides that
a school district "shall classify" any teacher who is not classified as a permanent teacher
as a probationary teacher. (See generally *Stockton Teachers Assn. CTA/NEA v. Stockton
Unified School Dist.* (2012) 204 Cal.App.4th 446, 455-456 (*Stockton*).) Thus, it has been
stated that the probationary teacher classification is the "default classification" when the
Education Code does not otherwise specify another teacher classification. (*Id.* at p. 456.)
That said, the published cases recognize that certain provisions of the Education Code do
authorize school districts to classify teachers as temporary teachers. (*Ibid.*) At the same
time, however, the published cases indicate that the temporary teacher classification may
be applied only in "'certain narrowly defined situations,'" and that any statute concerning
the classification of a teacher as a temporary teacher must be "strictly construed" in favor
of the default classification of probationary teacher. (*Id.* at pp. 456-457.) Accordingly,
even when an employee agrees in a written contract to be hired as a temporary teacher,
"such a written agreement is not determinative unless the classification is authorized by

---

[6]     The Education Code also includes statutes governing substitute teachers, but those
laws are not involved in this case. Further, as will be developed in this opinion, there are
teachers who contract to work for school districts under categorically funded projects.

statute.  A school district may not classify a person as a temporary employee unless the position in which he or she is employed is 'a position the law defines as temporary.' [Citation.]  If the employee does not satisfy one of the statutory grounds for classification as a temporary employee, the default provision of section 44915 mandates classification as a probationary employee.  [Citation.]" (*Id.* at p. 457.)

Section 44917 prescribes when temporary employment will be deemed to be probationary employment.  The third paragraph of section 44917 provides:  "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

Section 44929.25 is a temporary teacher statute.  Section 44929.25 governs the subject of teachers of "adult classes."  It is undisputed that Ortolano taught in the District's DACE system for adults and thus fell under the ambit of section 44929.25. The third paragraph of section 44929.25 reads:

> "Notwithstanding any other provision to the contrary, any person who is employed to teach adults for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties *shall be classified as a temporary employee, and shall not become a probationary employee* under the provisions of Section 44954." (Italics added.)[7]

The parties in Ortolano's current case agree that the 60 percent figure prescribed by section 44929.25 means a threshold of teaching duties of more than 18 hours per week in the District's DACE program.  (See *Kettenring v. Los Angeles Unified School District*

---

[7]     The reference to section 44954, here, appears to be a problem with coordinating section numbers as the Education Code was amended over the years.  Former section 44954 explained when a temporary teacher would be considered a probationary teacher. (See Stats. 1976, ch. 1010, § 2.)  The current section 44954 merely explains when a school district may terminate a temporary teacher.

13

(2008) 167 Cal.App.4th 507, 515-516.)  Further, the parties agree that the measure of this "more than 18 hours per week" threshold is determined by calculating the average number of hours an employee worked for an entire school year, not by looking to any given time period during that school year where the employee may have been assigned to work more than an 18 hours per week.  (See *Berkeley Federation of Teachers v. Berkeley Unified School Dist.* (1986) 178 Cal.App.3d 775, 779-780.)  Accordingly, if Ortolano worked 18 hours or less per week, then he would be classified properly as a temporary teacher under the statutory definition set forth in section 44929.25.  On the other hand, if he worked more than 18 hours, he does not fit the definition of a temporary teacher, and must be considered to have fallen into the default classification of a probationary teacher pursuant to section 44915.

The District argues that, in determining if Ortolano worked the threshold of more than 18 hours to qualify him for probationary teacher status, section 44909 must be considered.  That section has the smell of being another temporary teacher statute, although it does not use express "temporary employee" language as does section 44929.25.  Section 44909 gives a school district the authority to employ a teacher for a temporally-fixed duration — specifically, for the time the district is providing educational services through a "categorically funded program."  When a school district employs a teacher, as needed, for such a categorically funded program, the hours that a teacher works are not counted in determining the teacher's eligibility for permanent status. Section 44909 reads as follows:

> "The governing board of any school district may employ persons possessing an appropriate credential as certificated employees in programs and projects to perform services conducted under contract with public or private agencies, or categorically funded projects which are not required by federal or state statutes.  The terms and conditions under which such persons are employed shall be mutually agreed upon by the employee and the governing board and such agreement shall be reduced to writing. *Service pursuant to this section shall not be included in computing the*

14

*service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee* unless (1) such person has served pursuant to this section for at least 75 percent of the number of days the regular schools of the district by which he is employed are maintained and (2) such person is subsequently employed as a probationary employee in a position requiring certification qualifications. *Such persons may be employed for periods which are less than a full school year and may be terminated at the expiration of the contract or specially funded project without regard to other requirements of this code respecting the termination of probationary or permanent employees . . . .*

"[¶]

"This section shall not be construed to apply to any regularly credentialed employee who has been employed in the regular education programs of the school district as a probationary teacher before being subsequently assigned to any one of these programs." (Italics added.)

Section 44909 derives from former section 13329, which existed prior to the reorganization of the Education Code that became effective in 1977. (*Zalac v. Governing Bd. of Ferndale Unified School Dist.* (2002) 98 Cal.App.4th 838, 845 (*Zalac*).) We have reviewed the language of former section 13329 (see Stats. 1973, ch. 399, § 2); it is virtually identical to that found in section 44909. In *Winslow v. San Diego Community College Dist.* (1979) 97 Cal.App.3d 30, the court read the language of former section 13329 to embody the Legislature's "intent . . . to prevent a person from acquiring *probationary status* [*sic*] solely through teaching in a categorically funded program. This permits the hiring of qualified persons for categorically funded programs . . . without incurring responsibility *[thereafter] to grant tenured status* based on such teaching services alone." (*Id.* at p. 38, italics added.) We will have more to say on this subject below, but note here that former section 13329, and current section 44909, only speak to the subject of a teacher's "*eligibility to . . . classification as a permanent employee,*" and

15

that neither section expressly speaks to the subject of a teacher's eligibility for classification as a probationary teacher. Even so, we agree with the general proposition that former section 13329 was, and current section 44909 is, intended by the Legislature "'to give school districts flexibility in the operation of special educational programs [which] supplement their regular program,'" and to relieve school districts "'*from having a surplus of . . . permanent teachers*'" when funds for a special educational program are terminated or cut back. (*Zalac, supra,* 98 Cal.App.3d at p. 845, italics added, quoting from *Kamin v. Governing Board* (1977) 72 Cal.App.3d 1014, 1018 (*Kamin*).)

With this statutory framework in place, we address whether the trial court correctly found that Ortolano was a probationary teacher for the 2007-2008 school year.

*Analysis*

1.      The Statutory Construction

The trial court found that Ortolano qualified as a probationary teacher by statutory definition under sections 44915 and 44929.25 because he worked an average of more than 18 hours per week. The District agues this is incorrect because certain of Ortolano's hours were taught pursuant to a section 44909 contract. In making this argument, the District necessarily stakes out the position that section 44909 hours categorically should not be countable as regular teaching hours when it comes to determining a teacher's probationary status.[8] The trial court construed sections 44915 and 44929.25 on the one hand, and section 44909 on the other hand, as dealing with distinct subjects. As stated by the trial court: "[T]he hours worked under the specially funded project are not credited towards the attainment of permanent tenured status. [Citation.] However, section 44909's prohibition of crediting special contract hours concerns the accumulation of service time for tenure, [that is, permanent teacher status,] while the temporary/probationary threshold under [section] 44929.25 concerns total hours worked

---

[8]      Amicus United teachers of Los Angeles (UTLA) essentially argues in a brief supporting Ortolano's appeal that the District's practice of using section 44909 contracts is designed to deny proper classification of teachers as having probationary teacher status. We do not reach this issue because we find it unnecessary to do so to resolve Ortolano's appeal.

16

during the relevant period. It does not appear that the former restriction applies to the latter scenario. . . ."

We have read nothing in the briefs to persuade us to reject the trial court's plain language reading of the statutes, although we recognize that it does set up the potential for a conflict between section 44909, which disallows section 44909 hours from being credited toward eligibility for permanent teacher status, and section 44929.21, subdivision (b), which provides that a probationary teacher transitions to a permanent teacher after two consecutive years of service as a probationary teacher. If a teacher is given probationary status under section 44929.25 under the trial court's interpretation, and works for two years as such, he or she would transition to a permanent teacher under section 44929.21, subdivision (b). This could be a conflict in the event that part of the hours credited for probationary status under the trial court's interpretation of section 44929.25 are section 44909 hours, which should not be credited for attaining permanent teacher status. The trial court avoided this conflict by finding other reasons, apart from section 44909, for why Ortolano did not transition from a probationary teacher to permanent teacher. All of this being as it may, we agree with the trial court that sections 449915 and 44929.25 mean what they say — a teacher who works more than 18 hours per week is a probationary teacher by statutory definition. This conforms with the general rule that probationary teacher status is favored, whereas temporary teacher status is disfavored, and to be strictly construed.

2.     The Factual Examination

But even assuming we accepted that  section 44909 must be considered in the probationary teacher determination, when it facially applies because a teacher has signed a section 44909 contract, we would still affirm the trial court's ruling on Ortolano's probationary teacher status. Here, we find the trial court's finding that Ortolano did, in fact, work pursuant to validly entered and implemented section 44909 contracts with the District (see footnote 5, *ante*) is not supported by the record.

17

The published cases make clear that the question of a teacher's status under the Education Code is largely dependent upon the history and the circumstances of his or her teaching duties, and how the facts of that teaching history fit within the Code's provisions governing teacher classifications. As such, a trial court's determination of a teacher's status is reviewed for substantial evidence. (See, e.g., *American Federation of Teachers v. Board of Education* (1977) 77 Cal.App.3d 100, 106-108 ["substantial evidence" supported the trial court's finding on teacher's status]; see also *Stockton, supra*, 204 Cal.App.4th at pp. 464-465 [discussing teachers' status as shown by the evidence and concluding that there was "no proof" they were temporary employees]; *California Teachers Assn. v. Vallejo City Unified School Dist*., *supra*, 149 Cal.App.4th at pp. 148-152 [reviewing contested factual claims]; and see also *Kamin, supra,* 72 Cal.App.3d at p. 1017 [where the evidence establishes that the "statutory requirements are met, a teacher's rights are automatically vested independently of any action by the governing board"].) Here, the record does not contain substantial evidence establishing that Ortolano did actually teach pursuant to a validly entered and implemented section 44909 contract. In other words, because the District did not prove that Ortolano taught pursuant to a validly entered and implemented section 44909 contract, we are left with a record showing that he worked more than 18 hours per week on average, notwithstanding that he signed a section 44909 contract.

*Stockton, supra*, 204 Cal.App.4th is instructive. In *Stockton*, a school district classified nine teachers who had been hired pursuant to written temporary teacher contracts as temporary teachers, and issued them notices that they were being laid off for the upcoming school year. Notwithstanding that a true temporary teacher is not entitled to an administrative hearing to contest a lay off decision, the school district offered such a hearing to the teachers out of concern whether it had inappropriately classified them as temporary teachers. An administrative law judge ruled that the school district was not prohibited from entering into temporary contracts with employees working in categorical funded programs under section 44909. The teachers union, in turn, filed a petition for writ of administrative mandate to challenge that decision. (*Stockton, supra*, 204

18

Cal.App.4th at pp. 451-453.) The trial court denied the union's petition. The Court of Appeal reversed the trial court's judgment. It reasoned:

"Section 44909 employees are thus treated like probationary or temporary employees depending on the duration of their employment. A person employed under section 44909 is to be treated like a temporary employee, *provided* the person is employed for the duration of the contract with a public or private agency or categorically funded project. In other words, a person may be hired for the particular project (or contract) term and be terminated at the end of that term without the notice that would be required for a probationary or permanent employee. . . .

"What a district may not do is hire a person for *more or less than* the entire or remaining term of the contract or project, and treat such a person as a temporary employee. . . . Because an employee who is terminated before the end of the contract or project, or who is hired for a period less than the entire or remaining term of the contract or project is not a person hired 'pursuant to this section' such an employee must be treated as a probationary employee — the default classification. [Citation.] Said employee accrues service time as a probationary employee. In terms of seniority and reemployment rights, employees hired for less than the entire or remaining term of the project or contract and employees terminated before the end of the contract or project are entitled to be treated like probationary employees.

"This interpretation of the section satisfies the competing interests the Legislature sought to balance in enacting the classification provisions of the Education Code and in enacting section 44909. Specifically, this interpretation allows school districts the flexibility to operate special programs without having a surplus of probationary or permanent teachers when the special program is terminated. [Citation.] It also protects employees by preventing a district from hiring temporary employees for a term that has no relation to the term of the program for which they are hired." (*Stockton, supra*, 204 Cal.App.4th at pp. 463-464, fn. omitted.)

The *Stockton* court then applied the facts to the statutory scheme: "Turning to the particular employees that are the subject of this action, there is no evidence that the employees were terminated at the expiration of a categorically funded program. [¶] The administrative record contains the employment agreements of all the affected employees except Rebecca Hardison, Susheela Nath and Adrian Nickols. The agreements in the record indicate they all began employment after July 1, 2008, for a term ending May 29, 2009. None of the agreements indicates the particular categorical program for which each was being hired.

"The only evidence regarding the particular categorical program for which the employees were hired was presented not by District, but by the employees themselves. Thus, Annette Albertoni testified that she was told there were positions open because of QEIA, the Quality Education Investment Act of 2006 [Citation.]. Gloria Gonzalez testified that she was told her position was through special QEIA funds. Adriana Solis testified that she was never told about any special funding for her position when she was hired, but after she was hired she was sent to QEIA training. That was how she became aware that she was in a QEIA funded position. No evidence was presented that QEIA funding was eliminated.

"District asserted that Rebecca Hardison was eliminated because of a reduction in CAHSEE (California High School Exit Examination) funding. There was no evidence that CAHSEE was a categorically funded program, or that it was being eliminated.

"Susheela Nath testified she was hired as a literacy specialist. District presented evidence that the instructional specialist positions are categorically funded positions. However, no evidence was presented that the instructional specialist funding was being eliminated.

"In the administrative proceeding, District filed an accusation against the teachers involved in this appeal, alleging that they were temporary employees. Because District made this affirmative assertion, it had the burden of proof. [Citation.] District concedes it had the burden of proving compliance with the layoff statutes. To prove that its employees were temporary under section 44909, District was required (1) to show that

20

the employees were hired to perform services conducted under contract with public or private agencies or categorically funded projects which are not required by federal or state statutes; (2) to identify the particular contract or project for which services were performed; (3) to show that the particular contract or project expired; and (4) to show that the employee was hired for the term of the contract or project. Because District failed to prove some or all of these facts, the employees must be treated as probationary." (*Stockton, supra*, 204 Cal.App.4th at pp. 464-465.)

In Ortolano's case, the District raised the claim that Ortolano was a temporary employee. Because the District made this affirmative assertion, it had the burden of proof. (*Stockton, supra*, 204 Cal.App.4th at p. 465.) We find the District's evidence fell short in proving up Ortolano's status as a true section 44909 teacher in a fashion similar to the school district's evidence in *Stockton*. The evidence presented by the District to prove Ortolano's status as a temporary teacher primarily came from two declarations, the first from the DACE system's Human Resources Coordinator, Alonzo Cienfuegos, and the second from Laura Chardiet, the District's "Workforce Investment Act (WIA) Specialist."

In his declaration, Cienfuegos presented evidence showing that Ortolano had signed a series of section 44909 contracts, a fact not really contested by Ortolano. Chardiet's declaration explained that the WIA provides federal grant funding to promote adult literacy, and that, "[b]ecause of the WIA grant funds, the District is able to offer additional instructional time for adults." Further: "[T]he ability to offer such additional instructional time hinges upon the amounts of the grants that are awarded on a yearly basis. Each year, the Adult Education Division of the District has to apply for the WIA grant. The amount of funds awarded each year varies, depending on a number of factors, including: previous year performance of the program, the number of agencies applying for the funds statewide, and the amount of the grants offered by the [WIA]. As such, it is difficult to project from year to year how much WIA funding will be provided to the District for the purpose of supplemental instructional time for adults."

21

We find, in accord with *Stockton,* that the District's evidence failed to prove that Ortolano did in fact teach pursuant to a validly entered and implemented section 44909 contract. While the District's evidence generally explained the annual timing and fluctuations of the federal funding for WIA programs, the evidence did not show that WIA funds were distinctly accounted for by the District to a specific program during Ortolano's employment with the District; and that Ortolano was paid with WIA funds for a distinct period of time and for a specific WIA-funded program during the school years in which he signed the section 44909 contracts. Because the District wanted to avoid the "default classification" of probationary teacher, the District needed to put on sufficient evidence to support a finding that the District had truly employed Ortolano through a categorically funded program under section 44909. Accordingly, Ortolano's signing of two section 44909 employment contracts during the 2007-2008 school year that facially might have had the effect of rendering him a temporary employee did not necessarily prove that he was, in fact, working as a section 44909 employee. (*Stockton, supra*, 204 Cal.App.4th at p. 457.)

In summary, because the District's evidence did not prove that Ortolano truly worked section 44909 hours during the 2007-2008 school year, we are left with the showing that he worked a total of 20 hours per week. As the trial court found, this took him outside the definition of a temporary teacher under section 44929.25, and, by default, placed him into the classification of a probationary teacher pursuant to section 44915.

Nothing in this opinion is intended to suggest that the Districts' practice of using section 44909 contracts is inherently suspect. We hold only that, *as to Ortolano*, the District did not prove that he truly worked hours distinctly segragable as being worked pursuant to section 44909 contracts for a categorically funded program. The only person affected by this opinion is Ortolano.

## II.    The 2008-2009 School Year:  Ortolano's Claim for Permanent Teacher Status as of September 2009 — the Main USERRA Issues

Having agreed with the trial court's finding that Ortolano qualified as a probationary teacher based on the total number of hours worked, it follows that, had

22

Ortolano not been called away to military, he would have qualified as a probationary teacher during the 2008-2009 school year as well. The District had scheduled him to work more than an average of 18 hours per week, and, for the reasons explained above, the fact that he signed a section 44909 contract do not change this calculation. We turn now to the effect of his military service and the time his military service had on his teaching career.

Section 44929.21, subdivision (b), provides: "Every employee of a school district . . . who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district." Ortolano contends that because he taught for the District as a statutorily-defined probationary teacher for two consecutive years, namely, the 2007-2008 and 2008-2009 school years, and was re-elected for the ensuing 2009-2010 school year, he qualified for classification as a permanent teacher at the start of the 2009-2010 school year, specifically, as of September 9, 2009. Ortolano argues the trial court erred in ruling that the USEERA did not apply to make his 2008-2009 school year a probationary teacher year for purposes of determining his statutory right to transition to the classification of a permanent teacher. We find no such error.

The USERRA is a federal law that prescribes legal rights and responsibilities for members of the military services and their civilian employers. Generally speaking, the USERRA is intended to ensure that persons who perform military service do not suffer disadvantages in their civilian careers due to their military service.

Ortolano is correct that, if he had been classified as a permanent teacher on the date that he left for military service, then the USERRA would mandate that the District credit his time away from the classroom as the equivalent of time spent working in the classroom, but only for certain purposes. For example, in determining *seniority* as against other teachers, the District would be required to credit Ortolano's time in military service as being the equivalent to time in service as a teacher. This is the essence of what

23

the parties both refer to as the "escalator principle." Paraphrasing Ortolano's argument: when an employee steps off the workplace escalator to the sideline for military service, he does not step back onto the escalator taking a position behind those who travelled past while he was on the sideline in military service. Instead, an employee steps back onto the escalator at the point where he would have been had he never stepped off the escalator. That is, again standing in front of those whom were behind him when he stepped off the escalator.

However, the issue in Ortolano's case is not so straightforward as an examination of where he steps back onto the seniority escalator. Instead, the issue is more nuanced and complicated. It involves the USERRA's effect, if any, on the subject of a teacher's "time in the classroom" where such time is a required element for transitioning a probationary teacher into a permanent teacher. As noted above, the Education Code requires that a probationary teacher serve for "two *complete consecutive* school years" before the transition to permanent teacher status occurs. This plainly is intended to provide a school district with two-year time period of observation and evaluation before a teacher attains permanent teacher status. Further, this period allows for the development of a record which serves as a basis for considering whether a person is capable of handling the job of being a teacher.

We find the Education Code's two-year period of observation requirement is not subject to accommodation under the USERRA's escalator principle. The USERRA does not necessarily entitle an employee to every possible job benefit that he may have accumulated had he not been called away for military service. For example, an employee may not be entitled to a job benefit which is dependent upon a work requirement demanding *actual performance* on the job. (See, e.g., *Aiello v. Detroit Free Press, Inc.* (6th Cir. 1978) 570 F.2d 145.) As another example, where a promotion involves the exercise of discretion on the part of the employer, as opposed to the mere passage of time, the promotion is not guaranteed by the USERRA. (See, e.g., *Almond v. United States Steel Corp.* (E.D.Pa. 1980) 499 F.Supp. 786.)

24

Ortolano's arguments are based on an implied proposition that seniority and tenure of teachers are subject to equal treatment under the USERRA. We reject this proposition. "Tenure and seniority are distinct concepts. 'Tenure has been stated to be a relation between the teacher and the school district, guaranteeing job security to the teacher, whereas seniority is basically a relation between teachers inter se, guaranteeing various privileges . . . to the "elder statesman." The purpose of a statute giving tenure to teachers is to insure an efficient permanent staff of teachers whose members are not dependent on caprice for their positions as long as they conduct themselves properly and perform their duties efficiently and well. Establishing a test period for teachers to prove themselves before granting them tenure is essential to a good education system.'" (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist*. (2006) 145 Cal.App.4th 1260, 1293, fn. 20.) The Education Code explicitly rejects Ortolano's premise that tenure and seniority must be treated equally when it comes to military service. Section 44800 provides that a teacher "shall be entitled to absent himself from his duties as an employee" of a school district, but further provides in relevant part: "Such absence shall not affect in any way the *classification* of such employee. In the case of a probationary employee, the period of such absence *shall not count as part of the service required as a condition precedent to the classification of such employee as a permanent employee of the district*, but such absence shall not be construed as a break in the continuity of the service of such employee for any purpose." (Italics added.)

In *Flores v. Von Kleist* (E.D.Cal. 2010) 739 F.Supp.2d 1236, a federal district court ruled that section 44800 is not trumped by the USERRA. "[U]nder . . . section 44800, a leave of absence for active military service 'shall not count as part of the service required as a condition precedent to the classification of such employee as a permanent employee of the district . . . .' It is undisputed that [Appellant] left his employment with the Orland Unified School District to serve in the military from October 15, 2004 to February 8, 2006. Under section 44800, this time period does not count towards [his] achievement of permanent teacher status." (*Id*. at pp. 1251-1252.)

25

The rule that probationary observation and review periods are not avoidable by applying the USERRA as a substitute is not new. As the United States Supreme Court stated in a case involving the USERRA's predecessor: "A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period." (*Tilton v. Missouri P.R. Co.* (1964) 376 U.S. 169, 180-181.)

We find no error in the trial court's ruling that Ortolano did not attain permanent teacher status at the start of the 2009-2010 school year. The USERRA did not exempt him from fulfilling the requirement that he teach for a requisite period of observation and evaluation to attain permanent teacher status.

## III. The 2008-2009 and 2009-2010 School Years — Ortolano's Alternative USERRA Claim

Ortolano contends that, in the event it is ruled for purposes of his probationary observation and evaluation period that the District was not mandated by the USERRA to credit him as though he had served as a teacher in the classroom during the time he was away for military service during the 2008-2009 school year, the USERRA still mandated that he should have been allowed "to complete [his] period of observation and evaluation" during the following 2009-2010 school year. The brief submitted by the District does not address Ortolano's claim, focusing only on the USERRA issue related to Ortolano's time away from the classroom in the 2008-2009 school year. We find Ortolano's argument persuasive.[9]

---

[9] We note that Ortolano did not argue his alternative USERRA claim in the trial court. Ordinarily, an issue not raised in the trial court is forfeited on appeal, but this rule may yield in a reviewing court's discretion when an important question of law is raised for the first time on appeal. (See generally, *Frink v. Prod* (1982) 31 Cal.3d 166, 170.) We are satisfied that Ortolano raises a pure legal question, namely, how to apply the USERRA to undisputed facts, and that this issue, involving veterans' rights under the USERRA of sufficient importance to address here. We also note no objection has been raised by the District.

The overriding principle of the USERRA is that a person may not be put in a worse position, should not suffer a disadvantage, because he or she has fulfilled a duty to serve in the military. In Ortolano's case, had he not served in the military for part of the 2008-2009 school year, he would have completed his two-year period of observation and evaluation at the conclusion of that year, and transitioned to permanent teacher status. Under the District's position on the USERRA, Ortolano had to start a two-year period of observation and evaluation from scratch, essentially losing his first year (i.e., the 2007-2008 school) year. We agree with Ortolano's contention that the federal USERRA should not have been subordinated to the state Education Code. He correctly observes that by looking to the Education Code as primary and then to the USERRA secondarily, rather than vice versa, a military reservist who is regularly called to active service could potentially never be able to complete his or her probationary observation and evaluation period --- being forced to restart from scratch with each deployment. We agree with Ortolano that this simply does not seem to fit within the USERRA's mandate that military personnel shall not be disadvantaged in their private careers. Further, we agree with Ortolano's argument that the proper remedy would be to deem him to have finished his observation and evaluation period during the 2009-2010 school year, rather than, as occurred, restarting a two-year period of observation and evaluation at the beginning of the 2009-2010 school year. This would put him as nearly as possible on equal footing with other teachers who started working at the same time of him, beginning a period of observation and evaluation together him in the 2007-2008 school year. Thus, unless another factor is implicated, Ortolano should have been deemed to have completed his two-year period at the end of the 2009-2010 school year, thus entitling him to transition to permanent teacher status for the beginning of the 2010-2011 school year.[10]

---

[10]     As noted above, under Ortolano's main USERRA claim, he argued that he transitioned to permanent teacher status at the beginning of the 2009-2010 school year. Under our analysis on his alternative USERRA claim, he transitions one year later.

**IV. The 2009-2010 School Year**

The trial court found that Ortolano was a temporary teacher during the 2009-2010 school year because he worked less than an average of 18 hours per week. In reaching this conclusion, the court interpreted and applied the third paragraph of section 44929.25, which reads as follows:

> "Notwithstanding any other provision to the contrary, any person who is employed to teach adults for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties [meaning not more than 18 hours per week] *shall be classified as a temporary employee*, and *shall not become* a probationary employee . . . ." (Italics added.)

On appeal, Ortolano contends the court erred in interpreting paragraph three of section 44929.25. He argues that having attained probationary status prior to the 2009-2010 school year, he could not lose that status except in accord with prescribed statutory procedures afforded to him as a probationary teacher under the Education Code. The respondent's brief submitted by the District does not directly address this argument. Instead, as discussed above, the District's predominant argument on appeal relies on its position that Ortolano never attained probationary teacher status because he never worked more than 18 hours per week of regular teaching duties, his additional hours per week in dispute being what we have called section 44909 hours. We agree with Ortolano that the trial court erred in finding he was a temporary teacher during the 2009-2010 school year. Having attained probationer teacher status during the 2007-2008 and 2008-2009 school years, he could not lose that status merely as a result of the reduced schedule of teaching hours that he worked during the 2009-2010 school year.

The Education Code prescribes detailed requirements for notice and due process hearings for a probationary teacher to be dismissed during a school year. (See §§ 44948-44949). For want of a better description, probationary teachers are not the equivalent of "at will" employees. We agree with Ortolano that a school district may not negate these

28

statutory protections merely by reducing a probationary teacher's work schedule so that it may be claimed that he is only a temporary teacher without such protections.

The trial court found that Ortolano taught an average workload of 14.725 hours per week in the 2009-2010 school year, which was "less than the 18 hour threshold required for him to be classified as something other than temporary under [paragraph three of] section 44929.25." In short, the court interpreted the third paragraph of section 44929.25 to be a stand-alone statute governing classification, meaning that in any given year in which an adult education teacher is assigned to teach less than 18 hours per week, the teacher "shall be classified as a temporary employee . . . ." In our view, the "shall be classified as a temporary employee" language must be read in conjunction with the immediately following language which states "and shall not become a probationary employee . . . ." As we harmonize the internal language in the statute, the third paragraph of section 44929.25 should be construed to apply only to a newly hired employee who does not work the threshold of 18 hours per week. For those teachers, they are properly classified as temporary "and "shall not become . . . probationary." However, for a teacher who has previously attained probationary teacher status, the third paragraph of section 44929.25 should not be interpreted so that it opens an avenue for a school district to *remove* that probationary status.

The trial court's interpretation of paragraph three of section 44929.25 conflicts with the Education Code's policy favoring probationary teacher status over the strictly construed and limited temporary teacher classification. Further, and more importantly, the court's interpretation puts paragraph three of section 44929.25 at odds with the myriad statutes establishing and affording prescribed notice and due process protections to probationary teachers prior to dismissal. Under the court's interpretation of paragraph three of section 44929.25, a school district would have the authority to ignore the due process procedures established under the Education Code by reducing a teacher's status from probationary to temporary merely by reducing his or her assigned teaching hours,

29

and then dismissing the teacher as a temporary teacher. We do not believe that this is the intended purpose of paragraph three of section 44929.25.[11]

Having determined that the trial court erred in finding that Ortolano was a temporary teacher during the 2009-2010 school year, we are left with the question of the appropriate remedy. As noted above, it is the general rule that a teacher who works for "two complete consecutive school years" as a probationary teacher then is transitioned to permanent teacher status at the end of those two school years, provided he is re-elected to teach for an ensuing school year. (§ 44929.21, subd. (b).) Given our conclusion that Ortolano had the status of a probationary teacher during the 2007-2008 school year, and the 2008-2009 school year (but did not have a qualifying observation period during that year), and the 2009-2010 school year (at which time he completed his observation period), and that he was then re-elected to teach for the 2010-2011 school year, he must have attained permanent teacher status at the conclusion of the 20009-2010 school year. This means the District improperly served him with the reduction in force during the 2011-2012 school year without affording him the protections prescribed by the Education Code for a permanent teacher.[12]

---

[11]     UTLA argues that section 44909 should not be interpreted to allow a school district to be able to classify a teacher as a temporary teacher through a series of one-year contracts ad infinitum. In this vein, UTLA appears to urge our court to rule that the District's contract practices — having teachers execute written contracts stating that a certain number of assigned teaching hours (for Ortolano, two hours) are offered pursuant to section 44909 and a categorical funded program — are unlawful because they amount to an attempt to "subvert the protections provided by the tenure system." We decline to declare the District's practices unlawful. Where a school district satisfies its burden of proving that a teacher was, in fact, hired pursuant to section 44909, we believe the law allows such hires.

[12]     No argument is presented in any of the briefs to suggest that Ortolano did not teach for a complete school year during the 2009-2010 school year. Further, it is undisputed that Ortolano worked for the entire 2009-2010 school year, albeit at a reduced number of hours per week. (See *Cox v. Los Angeles Unified School Dist.* (2013) 218 Cal.App.4th 1441 [the determination of whether a teacher taught for a complete school year is determined by the number of days he or taught, not by the number of hours].)

We leave it for the trial court and the parties on remand to draft the specific, appropriate language for judgment in favor of Ortolano in accord with this opinion.

## V. Further Analysis of the 2010-2011 and 2011-2012 School Years

Our analysis in Section I. of the trial court's finding that Ortolano qualified as a probationary teacher applies with equal force to the 2010-2010 and 2011-2012 school years. To reiterate, having worked the threshold 18 hours per week during the 2010-2010 and 2011-2012 school years, Ortolano qualified as a probationary teacher, regardless of the fact that he signed section 44909 contracts. This conclusion, of course, is rendered largely moot by our conclusion above that Ortolano attained the status of a permanent teacher at the conclusion of the 2009-2010 school year.

## VI. Court Filing Fees

Ortolano contends the USERRA entitles him to reimbursement of his filing fees and all other court costs incurred in pursuit of his action, both in the trial court and on appeal. The District's respondent's brief on appeal does not address Ortolano's fee-reimbursement contention. We agree with Ortolano that he must be reimbursed for any and all filing fees he has paid in the course of litigating his claims under the USERRA.

*Davis v. Advocate Health Center Patient Care Exp.* (7th Cir. 2008) 523 F.3d 681 (*Davis*) guides our conclusion. In *Davis*, a plaintiff veteran filed a federal court lawsuit alleging that he had been terminated from his job because of his prior military service, in violation of the USERRA. In conjunction with his complaint, the plaintiff filed a motion to waive the filing fee pursuant to a fee-waiver provisions in the USERRA. The federal district court denied the fee-waiver motion, and indicated to the plaintiff that his action would be dismissed within 25 days if he did not pay the filing fee. When the plaintiff did not pay the fee, the court dismissed the action.[13]

The Seventh Circuit Court of Appeals reversed the dismissal order, ruling that the USERRA permits a plaintiff to initiates a suit to protect his or her rights under the Act "without prepaying the filing fee." Specifically, USERRA section 4323(h)(1) provides:

---

[13] There was no formal order of dismissal, but the federal court's procedures effectively resulted in a final order of dismissal. (*Davis, supra*, 523 F.3d at p. 683.)

"'[n]o fees or court costs may be charged or taxed against any person claiming rights under this chapter.'" The court of appeals remanded the action to the federal district court to allow the plaintiff to proceed with his case without being required to pay the filing fee. (*Davis, supra*, 523 F.3d at pp. 683-685.) Further, the court of appeals stated: "Because Davis has already paid his filing fee to proceed in this court, we ORDER the clerk of this court to refund Davis's appellate filing fee." (*Id.* at p. 685.)

On remand, the trial court shall direct the clerk of the trial court to refund Davis's filing fee, if he paid such a fee. We direct the clerk of our court to refund Davis's filing fee for his appeal, if he paid such a fee.

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court with directions to enter a finding that Ortolano attained the status of a permanent teacher at the conclusion of the 2009-2010 school year, and for such other proceedings as are consistent with this opinion. The clerk of this court is ordered to refund Ortolano's filing fee on appeal, if he paid such a fee. The trial court shall direct the clerk of the trial court to refund Ortolano's filing fee, if he paid such a fee. Ortolano is awarded costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

FLIER, J.

32